Good morning. May it please the Court, my name is Stanley Friedman. I'm the attorney for the appellant and the defendant in the underlying case, Michael Chen. Your Honors, the principle issue, or the first issue raised in the briefs, is the one relating to the materials received by the United States Attorney's Office and the Internal Revenue Service from the accountant Tony Gu. In this case, discovery was controlled by Rule 16 of the Federal Rules of Criminal Procedure because the underlying case was a criminal case. Rule 16 permits discovery of certain items and does not permit discovery of other items. In terms of an expert witness and a summary witness, such as Mr. Gu, Subpart 2 of Rule 16 specifically states that a statement made to the defendant or the defendant's attorney or agent by the defendant is not discoverable. Such information is not subject to disclosure. That's actually what the rule says itself. Here, in contravention to Rule 16, such information was obtained by the government. This was specifically the notes of Mr. Gu that occurred with the meeting between counsel, Mr. Gu, and the defendant, and also the underlying documents that were presented to Mr. Gu. By obtaining the documents in this fashion, the government obtained the documents not by requesting the defendant or the defendant's attorney for disclosure of additional or further information. Rather, it was done by self-help when the agents themselves... Well, there's several questions, and one, first of all, there's no privilege, right? There's no privilege between an accountant and a client. I don't think there's a privilege issue. Is there? In this circumstance, Your Honor, I believe there was. Under the normal circumstance, when... What kind of privilege? Well, it's both the attorney-client privilege and the work product doctrine. Under the normal... Why? Was this prepared? Is there something in the record that this was prepared at the direction of an attorney or something like that? Yes, Your Honor. And where is that? Well... What is that? Well, here Mr. Gu was designated as an expert witness to testify at trial. Oh, no, no, but that was way after all this stuff was prepared, wasn't it? It was prepared by the defendant. It was given by the defendant to his counsel, and then his counsel gave it to Mr. Gu, who had been retained to act as an expert witness in the criminal trial. So under normal circumstances, when a taxpayer gives documents to his tax preparer, those documents are not themselves privileged. This is an unusual circumstance, because Mr. Gu was hired as an expert witness in a criminal case to testify in the event. No, but you can't, you know, he's a... I'll call it... I don't know, you know, in the other context, you'd call it a treating physician, but he's a participating accountant. In other words, you know, he's one of the personae in this little vignette. Yes, Your Honor. So he's a precipient witness in a way. Now, you can't just designate a precipient witness as an expert and then say everything he's done is privileged. Well, believe me... And a work product. Your Honor, I don't believe he is a precipient witness in that sense. There was another... Well, sure, he prepared the return. Not the one in question. Well, he prepared... well... That was a different accountant, Mr. York. But he prepared... he did a lot of work for this... Not for this restaurant. I believe he... I mean, for this client. For this client, but not... And he could testify, for instance, to, you know, modus operandi. I thought after the indictment he gave, the defendant gave you tax material to prepare amended returns. Yes, as part of his defense in the criminal case. It was sent to the Assistant United States Attorney. It was also sent, but apparently not filed, by the Internal Revenue Service. But that was to assist his testimony as an expert witness. In terms of actual tax preparation, Mr. Gu, I believe, had prepared tax returns for the House of Claypot, which is a restaurant, but not part of this case. This case involved a different restaurant called Faux Noir. And there, his only connection was to act as an expert witness. He was also designated as a summary witness, Your Honor. But to the extent that he was preparing returns, it was to act as an expert witness in the case. Would your argument also apply then to... I think the government raises, you know, the Section 301.7216 of the regs, right? Yes, Your Honor. And your argument also that that regulation doesn't apply because this is not tax return information? Yes, Your Honor. And actually, if one were to take a look at that section, what it says is that the criminal penalties that are in Section 7216 and then the other CFR 301.7216-1 do not apply to an Internal Revenue Service agent. So there, I believe, and this is the only contention I actually have today that I fully denied in the briefs. All that Section 301.7216.1 says is that the other sections do not apply to the Internal Revenue Service. So it wasn't a crime for the Internal Revenue Agents to accept the documents. It wasn't either a felony or misdemeanor. Whether it was for the assisting U.S. attorneys is an open question. But it wasn't a crime for them to accept it. But these sections did not authorize the IRS agent to accept such documents. It didn't permit it. The only thing that controlled in this case, because it was a criminal case, was Section 16. I think the government's best argument, but it would still be defeated, is that such documents were what the Ninth Circuit has called dual-purpose documents. And that's referenced in page 10 of my reply brief. And there the Ninth Circuit has said that if there's a dual purpose to the documents, if it's for preparation of tax returns, and here we contend it wasn't, but assuming that it was, if it was preparation for tax returns and it was for use in litigation, and here it certainly was for use in litigation, that the privilege could remain. The statements themselves were covered by the attorney-client privilege. And so when Mr. Gu wrote in his notes basically that my client, who was accused of underreporting or failing to report cash receipts, doesn't even know how to put it in QuickBooks, which is incredibly incriminating. He keeps his accounting records by QuickBooks. He doesn't even know how to put cash in those QuickBooks. When he writes that, that's attorney-client privilege. The documents that he received from the attorney were work product documents. And perhaps at some point in time they could have been disclosed and then waived, but they were never disclosed. He was put on the witness list, but he was never called by the government. So the documents that he had himself were covered by the work product privilege. The statements made to him in the presence of the attorney when he was acting, the attorney was acting as an agent of the defendant, and then Mr. Gu as an expert witness was acting as an agent of the attorney. All that was attorney-client privileged. And it should not have been turned over. Did the district court rule on the attorney-client? Did you assert attorney-client privilege in the district court? Your Honor, I don't know. I believe it was. In fact, it was. I wasn't the underlying attorney, but that was one of the bases for the motion to suppress. Do you know what the district court said about it? Yeah, the district court's ruling was that the defendant did not have standing to raise the issue, and that was the only decision decided by the district court judge, and that ended the inquiry, that he just didn't have standing. Because I believe, similar to what Your Honor's questioning was originally, that somebody under normal circumstances, which I would agree with, that a tax preparer is permitted to turn documents over to the Internal Revenue Service. But that doesn't address attorney-client privilege, does it? It does not. Well, not directly, Your Honor. I would agree with that. So to the extent that, and that's one of the points raised in my brief, one of the options for this court is if the court finds that the defendant had standing to raise the issue, to remand it for an evidentiary hearing, because there was no evidentiary hearing conducted, because the judge determined that there was no standing because under normal circumstances, a tax preparer is permitted to turn documents over to the Internal Revenue Service. Again, because these are not usual circumstances, when one files one's tax returns, you normally don't send a copy to an assistant U.S. attorney. One's normally not under indictment, and the tax preparer is not listed as an expert witness in the case. This is an unusual circumstance, and the government's best argument is that perhaps that there was a dual purpose. But here, because there was a dual purpose, the Ninth Circuit has already spoken on that issue, and the privilege remains. If the rule were otherwise, if the rule were otherwise, it would be bad policy and perhaps a dangerous precedent, because either side, either the government or the defendant, when the government or the defendant gets the notice of expert designation from the other side, could engage in tactics which are intimidating. And here, the unrebutted, well, it's not unrebutted. The testimony of Mr. Gu is that he was intimidated when he turned over his entire file to the assistant U.S. attorney and to the IRS. He was given a trial subpoena, but the trial subpoena didn't have any, and it called for documents to be produced. But there were no documents identified in the subpoena. So to some extent, it was an abuse to serve a subpoena for documents without specifying the documents. Mr. Gu was intimidated. He was scared. That's what he's declared. He just turned over his entire file, everything. There was no separation of attorney-client privilege documents. There was no hearing whether it was proper for that to occur. In terms of my second issue, the sentencing issue, there was an accountant, Irene C., who was not involved with the underlying case. She declared that she was a CPA. She worked for the State Board of Equalization for 27 years. She audited the books and records that were seized by the government, and she was prepared to testify based on her review of the books and records that the tax loss in the case was either zero or very close to zero, and certainly well overstated by the sentencing guidelines. However, the district court judge mistakenly believed, erroneously believed, that her testimony was based on the testimony of the defendant, Helen, here. And because there was a cloud under his head, she declined to consider such testimony. However. I think what he decided was she didn't have independent knowledge. She had to be testifying on information that had come directly from the accused. Yes, Your Honor. That's exactly what the district court said. But here, the accountant declared that she had actually independently reviewed the books and records that were seized by the Internal Revenue Service and that she was prepared to testify based on her review of the books and the records. I see that I have about three minutes left. Unless the Court has additional questions, I might reserve that time for rebuttal. Thank you very much, Your Honor. May it please the Court. My name is Mary Jean Chan, and I represent the United States in this appeal. My opposing counsel has only raised two of the four arguments raised in the brief, so I will limit my remarks to addressing those unless the Court has any other questions. I'd like to start off first with the suppression issue. In this case, there was no invasion of the defense camp. The district court correctly concluded that Chen had no standing to challenge this accountant's disclosures to the government of documents given to him to prepare tax returns. I think it's important at the outset to just clarify some of the chronology here. Well, just a minute, though. If it's true that he raised attorney-client privilege, he's not standing to raise that. Don't you think? Well, he has standing to raise that, certainly, Your Honor. But the question was there was nothing. He didn't meet his burden of establishing that there was any attorney-client privilege. I'd also like to... Wait a minute. That's different from standing. Now, is that what the district court concluded? No. The district court's only ruling was that Chen had no expectation, no reasonable expectation of privacy, given the federal regulation that specifically permits an accountant to turn over tax information. Well, I think Mr. Friedman made two arguments in response to that. One is these aren't tax return information because this accountant didn't prepare the returns in question. That's number one. That's incorrect. And number two is that doesn't cover the assertion of attorney-client privilege. I don't think this regulation can override attorney-client privilege, right, if it applies. That's correct. But I would like to, I think, first clarify the record because he's incorrect when he says that the information at issue here was not tax return information. There are three categories of information that Gu turned over to the IRS agents. First, 16 pages of spreadsheets that Chen prepared and turned over to Gu for what he said at trial for the purpose, what Chen himself said was for to help me file taxes. This is not contradicted in the record. He handed that information over. Second, what Gu turned over... What did he say? For what years? For 2004 to 2006 pertaining to FUNIA. And those are the 1120S tax returns. Second, what Gu turned over were QuickBooks reports that he compiled based upon the spreadsheets that Chen gave to him. And then third, what he gave was a sheet of notes pertaining to his meeting with Chen when Chen said, I would like you to prepare these tax returns. So it's incorrect when he says that this is not tax return information. It absolutely is. Let me ask this question. At the time, and I think Mr. Friedman said this was a trial subpoena, but at the time the subpoena was served, government already have noticed that he's listed as a witness? Yes. As a witness under Rule 16? Well, let me again clarify the record on that. So on December 8th of 2009, the defense listed Gu as a witness, just a fact witness, and stated that he was an accountant for Claypot House, the house of Claypot. December 10th, two days later, was when the IRS agents went and reached out to Gu, who was an accountant who had performed work for Chen, just as they reached out to any other accountant who had done work since it was pertinent to the tax charge. When you say reached out, what do you mean? Interrogated? No, they called him up and said, may we come and talk with you? And Gu said, sure. They went and visited him at his office, and then they had a conversation about it. After that, subsequently, then on December 11th, Chen was listed, I believe, as, they amended the witness list, and they also added on to the witness listing of Gu, in addition to accountant, house of Claypot and Claypot 2, expert witness. What day was that? I believe it was December 11th, if you look at the filing, which was an amended witness list by the defense. And according to Cummings, who, and this is at excerpts of record 21, and also in the pretrial transcript at supplemental excerpts of record 15, Cummings, who was the attorney, stated that December 11th was when Chen retained Tony Gu to compile his tax information and prepare tax records, tax returns for the years in question, and that on Monday afternoon, December 14th, defense counsel Robert G. Cummings first met with Tony Gu and received the attached information compiled by Mr. Gu. So I think it's important just to get the chronology down. But in any case, there's nothing in the record that shows that Gu was acting as anything other than just an accountant hired to do tax returns, and that he wasn't part of the defense team and thereby included in the privilege of attorney-client privilege. I should note also that although the defendant spends a lot of time in his reply brief talking about the work product privilege, he doesn't raise that in his opening brief, and therefore that argument is waived, that both of them are wrapped up together, which is that the attorney-client privilege is a strictly construed privilege that is not to be widely interpreted, and it is the defendant's burden to show that Gu was some sort of a member of the legal defense team. As I mentioned, that's not supported by anything that his attorney at the time, Cummings, said. It's not supported by anything that Chen said. He specifically said in his trial testimony that he hired Gu to perform accounting services. Gu himself never said that he was anything more than an accountant. In his declaration in 2011, he said – Well, let me ask this question. Yes. If you recall, you can say, oh, the papers – I don't want to see seeds, but of the papers that Gu turned over to the IRS, do you know, like, were there papers that were prepared after he was designated as an expert witness? Can you tell that? Or you don't know the answer to that? I don't know exactly the answer to that. He was designated an expert witness on the 11th, but what I do know is that Cummings turned over what he prepared to the U.S. Attorney's Office on December 14th and then publicly filed it with the court on December 15th, and then in early January filed it with the IRS. So to the extent that there was any privilege, it was waived. There wasn't an expectation of privacy because they made it public. They made it very public. It was part of their, I guess, strategy to say to the government, look, he didn't mean to not file these taxes. He's now taking remedial steps. Well, what do you mean? Those are the same papers that were – that Gu gave to the IRS? There's a great overlap. Of course, the privilege is waived as long as you disclose any communications on the subject matter. It doesn't have to be the specific documents at issue, but there's a great overlap. So, for example, of the 16 pages, those spreadsheets that Chen prepared and gave to Gu, three of those were summary pages that listed the – summarized all the cash expenses and the cash wages that Chen purported to have. Those three summary pages were disclosed to the government. The actual tax returns, which were based upon those 16 pages and based upon the compilation of that information in a QuickBooks report, that was disclosed to the government. It was disclosed to the court in a public filing. It was disclosed to the IRS by having those tax returns filed. So the only thing that wasn't disclosed, really, in substance, was maybe Gu's notes of his meeting with Chen, in which Chen said, I want you to prepare these amended tax returns for 2004, as well as new, for the first time, tax returns for 2005 and 2006, and an issue about how – an explanation that the reason his QuickBooks file, which is a different thing than his Excel spreadsheet, didn't contain cash because he didn't know how to put it in. But that entire subject matter was disclosed very clearly to the government. So there was no reasonable expectation of privacy, even apart from the federal regulation. I know that Chen and opposing counsel repeatedly tries to distinguish this by saying this is a criminal case and it's only subject to Rule 16. Rule 16 is one avenue by which the government can obtain information, and it requires mandatory disclosure by the defendant of certain materials. There's nothing about Rule 16 that prohibits the government from going to a witness as Judge Tsushima said, a precipient witness, going to that witness, whether he's designated as expert or otherwise, and saying, can you talk to us about what you know about the defendant and give us pertinent information. Nothing prohibits the government from doing that, so the government acted entirely properly here in doing so. There's also really nothing to make reasonable Gu's post-talk assertions of feeling intimidated, given that the agents called him up, always scheduled in advance these appointments, went to his office, made small talk, and that Gu, in some cases, faxed them information on subsequent days when they were not in his ambit, not physically near him at all. I do not concede that. I wanted to address that because I think it's important to show that the government agents here acted properly, but it's not significant, Your Honor, because he doesn't have any standing. So even if the agents hadn't acted properly, he would not have standing to come back to argue this. I'd also like to point this Court to Federal regulation, another separate portion of that same regulation, 26 CFR 301.7216-2, subsection Q. Subsection what? Q. Q. Go ahead. Q, the letter Q. Q. The one that I pointed to before, the one that allows for the disclosure of tax return information to IRS personnel or employees, that's subsection B. Subsection Q allows the disclosure of that information to, and quote, to the proper Federal official, to assist the official in investigating or prosecuting a violation of criminal law. So this Court can also affirm on that ground. And, of course, I return to the fact that Chen had no reasonable expectation of privacy given his numerous disclosures of the same substantive material. And also I'd also like to point this Court to the pretrial transcript, and you can see that at SCR, that's Supplemental Excerpt of Records 1420 and 32, when his attorney talked to the district court on December 15th, the same day that Gu turned over most of these materials, the very same day, he talked about all this. He indicated that his expectation was that the government had all the materials, the supporting materials and documentation for these tax returns, and that anything that he had, the government did not have, that he would turn over. So there's no expectation of privacy on this. And as this Court mentioned before, there is no privilege that relates to accountants. I'd like to talk quickly about the loss calculation. Here, as just Ferris noted, there is no clear error, because the district court simply didn't accept these assertions, which were based upon, yes, Mr. D sort of said it, and there was a lot of sound and fury. There were, I think, six declarations, three rounds of briefing about this contested sentencing loss. But what it came down to was that these mis-teased declarations were based upon Chen's accounting of what he claimed were expenses and losses. And as the government's witness indicated, for example, a lot of these things, these supposed deductions, were doubtful. There were deductions of payments to Chen's other restaurant, to his wife, his ex-wife, things that were noted, officer comp, to himself, multiple bank charges. And in the same location that he had the restaurant was where he lived. He lived on the upper level of that. And there were, for example, deductions for newspaper subscriptions that arguably were his own, and it was all based upon his own word that these were legitimate business deductions. So Ms. Tse, as thoughtful as her work might have been, was reliant on Chen's naked assertions. He didn't have anything but his word. And a lot of these other expenses were based on estimates. For example, with wages, the government had, you know, knew that they had witnesses who talked about having received cash wages and pointed to the spreadsheet that Chen himself had prepared for indicating what those cash wages were. In sentencing, Chen contended that those figures that he gave were not correct, and, in fact, the court should make some estimate independently based upon generalizations of what or how many people might have been working for him in order to come to a cash wages sort of figure. So there is really no way that the district court erred in saying that relying on Ms. Tse would not arrive at a more accurate assessment of the losses than the presumptive percentages. The district court was entitled to do this. It was reasonable in doing this. It was thoughtful in coming to this conclusion, having reviewed everything and given it a lot of thought. And this record shows that Judge Chesney certainly gave everything that was given to her for consideration a lot of thought. Thank you. Thank you very much.  Thank you, Your Honors. The chronology of events is indeed very important to the case, and the government misspoke in terms of the dates. On the record at page 43, it gives the dates of the events that occurred. And this meeting that's in question occurred on December 9th. The first witness list filed by the defense was also on that same day, December 9th. The first amended witness list was on December 11th, and that's the first time that Mr. Gu was indicated as an expert witness. There's a second amended witness list on February ‑‑ excuse me, on December 14th, where he is again listed as an expert witness. The first meeting with the IRS is after that third filing, which is on December 15th, 2009. And then the following day, Mr. Gu faxes additional documents to the Internal Revenue Service. I don't want to make your argument or take you away from your argument, but the pivotal question for us is whether there's a privilege. Isn't that so? Yes, Your Honor. And there was a privilege, and it wasn't waived at the time that Mr. Gu would testify. And if that is the question, whether there's a privilege, you have to show that the accountant and your client, there was something privileged in their relationship, or are you just deciding and asking us to decide that the accountant was really hired by the lawyer and therefore everything he had came under the lawyer's client? Yes, Your Honor. It's similar to the Second Circuit case of Kovel, K-O-V-E-L. Which one was the privilege between the accountant and your client? Yes, Your Honor. Because the attorney is acting as the agent of the client, and the agent of the client, who is the attorney, then hired the accountant. So that faithful meeting of December 9th was covered by the attorney-client privilege, and it was never waived. It might have been waived if Mr. Gu had been called as a witness at trial by the defense, but he was not. He was called by the government after the court denied the motion to suppress. So that was indeed a privileged meeting. The documents themselves were covered by the work product privilege. The documents that were sent over, I'm not contesting that documents that were sent to the IRS or the U.S. Attorney's Office were either waived or never privileged. It's the other documents, the most incriminating documents. The issue here wasn't intent. The issue in this criminal case wasn't whether the defendant had underreported his taxes. It's whether he had criminal intent when he did it. And when the government was able to submit a note from the accountant saying, he doesn't even know how to put cash on his books, that's incredibly incriminating. It was attorney-client privilege. The documents themselves were covered by the work product doctrine. They should never have been turned over. The court erred when it denied the motion to suppress, and it erred when it permitted admission of the underlying note and it permitted the argument itself. If the rule were to be otherwise, it could be very much of a dangerous precedent. If I could maybe just have 30 seconds to respond to other issues if I may. Well, let me ask one question first. Even assuming attorney-client privilege applies and assuming there was some violation, I think this is argued that, well, it's harmless error because this is all cumulative of other evidence that was introduced at the trial anyway. I think that would be a very good point if it weren't a tax case. Where to convict a defendant of a tax case, the intent is entirely different than in almost every other area. I think tax and structuring, the intent requirement is a willfulness rather than a knowledge. And so here the defense was not that he underreported his taxes. I think there was ample evidence. I think it was overwhelming evidence that he underreported his taxes. But the defense was one of intent that a person who had a very poor command of English and somebody who did not understand the system didn't have the willfulness required to convict him of this type of case. I think it was a bank robbery case. It was almost any other case in the law, Your Honor's point would be valid and I think overwhelming, but because it was a tax case, because it's willfulness rather than knowledge. The evidence that was submitted was the strongest evidence that the government had, and that's why the government referenced it during the course of the trial, and I believe it was even during the opening statement. And so that was the response to Your Honor's question. Here Mr. Gu testified that he was intimidated. The subpoena looks like a court order, and the government was actually sloppy about it. They were asking for documents, but they didn't even have an attachment. And then once they got these documents, it had notes of a meeting with an attorney. The attorney, the U.S. Attorney's Office manual talks. It's not binding, but it tells an assistant U.S. attorney what to do when he or she gets documents that are privileged. There's a process that the U.S. Attorney's Office is supposed to use, and they didn't do anything. They just turned it over wholesale. And here, just to conclude, Your Honor. What do you mean when you say they? The U.S. Attorney's Office didn't do anything. Didn't notify the court, didn't take these documents, and create a privileged team, a non-privileged team, as often is done. For example, if the IRS searches Chevron and obtains documents, and that there are letters from the attorney, normally the FBI would segregate those documents, put them separate, and then there would be some sort of process. What the courts recommend is that they be submitted to a United States magistrate judge, and the United States magistrate judge consider that with an assistant U.S. attorney who is not involved with the case, because if there's a privilege, then that should not be turned over to the government. That was not done here. There was. But what about the waiver point government raises? Well, I don't know about you, or maybe your predecessor, turned over a lot of papers, right, to the government voluntarily. Yes, Your Honor. On the same subject, covering the same period. Well, he turned over. And that a waiver? Not as to everything. It was a waiver as to what would appear on the documentation that was submitted to the IRS. Well, you can't turn a client privileged selectively, can you? I believe you can. So, for example, only the raw numbers were submitted to the IRS, but not the defendant's knowledge or lack of ability to be able to put cash receipts on QuickBooks. So here are the numbers. It's been prepared by Mr. Gu. There's no information even that was obtained by the defendant, because as the government points out, I missed it in my brief, he didn't even sign the returns. So it's just the raw information itself. There was no waiver until Mr. Gu would testify here. He did not testify on behalf of the defendant. There was a reasonable expectation of privacy based on the declaration of the defendant. And Mr. Gu, who maintained the records, you know, very privately until turned over to the Internal Revenue Service. He used self-help instead of contacting you before he decided to use his self-help. Yes, Your Honor. Yes, Your Honor. And I think that's the danger here. If the rule were otherwise, I think each party would have an incentive to engage in intimidating conduct to get information that might not otherwise be available under Rule 16. Thank you, counsel. Thank you very much, Your Honor. The case is here to be submitted. The court will stand and recess for the day.
judges: Farris, Reinhardt, Tashima